Filed 12/2/20  Marriage of Clark CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of DEBORAH and EDWARD L. CLARK. | |
| DEBORAH CLARK,<br><br>    Respondent,<br><br>        v.<br><br>EDWARD L. CLARK,<br><br>    Appellant. | G058030<br>(Consol. with G058284)<br><br>(Super. Ct. No. 05D000275)<br><br>O P I N I O N |

Appeals from orders of the Superior Court of Orange County, Barry S. Michaelson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Offices of Thomas M. McIntosh and Thomas M. McIntosh for Appellant.

No appearance for Respondent.

# INTRODUCTION

Edward Clark appeals from an order denying his motion made pursuant to Code of Civil Procedure section 473 (section 473), to set aside an order requiring him to resume equalization installment payments to his ex-wife, Deborah Clark. He has identified 13 issues on appeal, some of which duplicate each other.

We affirm the order. Edward has profoundly mistaken the purpose of a discretionary motion under section 473. It is to relieve a party or his counsel from the adverse consequences of mistake, inadvertence, surprise, or neglect. It is not to point out to the trial court where it has erred. Edward has failed to explain how the trial court abused its discretion in denying his motion. Furthermore, Edward has for the most part failed to observe some basic principles of appellate review, in some cases with fatal results.

Only one issue survives: whether the family court had jurisdiction to hear and adjudicate the dispute between Edward and Deborah. We hold that it did. The rest of the issues relating to the set aside motion are not reviewable in this court.

Edward has also appealed from an order from the same day granting Deborah $3,000 in attorney fees under Family Code section 271. We affirm that order as well, as we are unable to find that the family court abused its discretion in making the award.

# FACTS

As we are required to do, we recite the facts in the manner most favorable to the judgment. (*In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 990, fn. 1.)

Edward and Deborah were divorced in 2007. The marital settlement agreement, which became part of the judgment in 2006, provided that, in lieu of a lump-sum equalization payment to Deborah, Edward would pay her $250,000 at the time and the rest ($1.7 million) in installments of $9,227 per month over 30 years, at five percent

interest. The parties waived spousal support. Deborah later testified that the monthly payment was her sole source of income.

Edward presented the court with an acknowledgement of satisfaction of judgment (full) ostensibly signed by Deborah on January 14, 2013, and recorded the same day. The register of actions in the divorce case does not reflect the filing of an acknowledgement of satisfaction of judgment or a demand for the filing of an acknowledgement.[1] Notwithstanding the acknowledgement of satisfaction of judgment, Edward continued to make the monthly payments mandated by the marital settlement agreement/judgment until 2016.

In 2016, Edward still owed Deborah $1.3 million in equalization payments. He told Deborah he could no longer make the monthly payments because he found himself in financial difficulties. If she would sign some papers, he could take $1 million in equity out of his house and put it in her bank account, then use $150,000 of it to pay his taxes. She could live on the remaining $850,000 for the estimated two years that it would take Edward to reorganize his finances. He would then resume the monthly payments until the balance – some $300,000 plus the $150,000 he took for taxes – was finally paid off. Deborah agreed, largely because Edward told her that if she did not, she would get nothing.

Deborah signed a debt settlement agreement on March 21, 2016. Under the terms of the debt settlement agreement, Deborah was supposed to receive the entire $1 million. Edward nevertheless took $150,000 of that amount, pursuant to the previously made oral agreement. He sent two text messages to Deborah acknowledging the agreement to pay her the balance of the equalization payment.

In 2017, Deborah called Edward to find out when he was going to resume the monthly payments, assuming that his financial problems would be on the way to

---

[1] At trial in September 2018, Deborah testified that she had no memory of the document. In fact, it was recorded but never filed.

3

resolution. Edward told Deborah he was not going to pay her. He might repay her the $150,000 he took for his taxes, but nothing else.

Deborah filed a request for order (RFO) on April 17, 2018, in the divorce case, asking for an order to enforce the judgment – in particular the remaining monthly payments. The moving papers included the debt settlement agreement and the acknowledgement of satisfaction of judgment as exhibits and a declaration from Deborah explaining how she had come to sign them. The RFO was personally served on Edward on May 7, 2018. Edward filed an opposition on August 22, 2018, denying that he owed Deborah any more money and giving his version of events.

The case was tried to a family law commissioner over two days, September 18 and October 12, 2018. Both Edward and Deborah testified. At the end of trial, the court ruled in Deborah's favor. It found that she had been due $488,500 as of April 30, 2016, per the marital settlement agreement. The components of this amount were (1) the balance of the monthly payments due under the marital settlement agreement/judgment of 2006 ($388,500) and (2) the $150,000 that Edward had taken from the $1 million to pay his taxes. In other words, Edward had to pay the full amount agreed to in the marital settlement agreement/judgment and was not entitled to discount that amount by means of the debt settlement agreement and the satisfaction of judgment.[2] He received a credit for the $850,000 Deborah received from the home equity loan. But he had to pay the rest ($525,137, including interest as of October 2018) in monthly installments, as mandated by the original judgment.[3]

The court's judgment – right or wrong – was fairly straightforward. It did not believe Edward's version of events, which was that Deborah was so desperate for

___

[2]     The court noted that the amount Edward proposed as his final payoff, $850,000, was an unreasonable 35.8 percent discount on the balance still owing, and even the total amount borrowed, $1 million, was a 24.5 percent discount, also unreasonable.

[3]     The ruling included a payment amortization schedule for monthly payments beginning November 1, 2018.

4

money that she was willing to forego $488,000 over time if she could get $850,000 immediately.

On December 10, 2018, Edward filed an RFO styled "motion to vacate order," that is, the October 12 order. The memorandum of points and authorities referred to section 473, subdivision (b), as the basis for the motion, although no supporting case law was cited.[4] The motion also referred to section 473, subdivision (d), the procedure for setting aside a void judgment, in this case for failing to serve Edward with a summons and complaint.

The motion had a large number of issues to support the request to vacate the order of October 12. These can be grouped into three categories. First, Edward asserted the court had no jurisdiction to hear the matter because the satisfaction of judgment ended the divorce case as of 2013. Any subsequent complaint Deborah had would have to be adjudicated in a civil court, not as part of the divorce. Second, Edward did not know that the debt settlement agreement would be at issue at the trial. Finally, he had 17 issues concerning the evidence presented at trial.[5]

The matter was heard on March 8, and the court issued the order denying the motion to vacate on April 15, 2019. At the same time, the court assessed $3,000 in attorney fees to pay Deborah's counsel for opposing the motion.

Edward filed a notice of appeal from the April 15 order denying his motion to vacate on July 17, 2019. He then filed a notice of appeal from the attorney fee award, also ordered on April 15, on September 6, 2019. The two appeals have been consolidated.[6]

---

[4] Edward's counsel declared that she and Edward were surprised when they received an adverse ruling.

[5] It is not easy to keep track of these issues because they are identified rather haphazardly. Edward begins with issues A through F, then switches to c. through h., then begins over again with a, b., c., d., and i.

[6] Some proceedings took place after the entry of the April 15 order, but we have not considered them because the notices of appeal are restricted to the orders of April 15.

## DISCUSSION

Before we discuss the 13 issues Edward has raised in this appeal, some basic features of appellate review need to be addressed. First, we rely entirely on the written record, the completeness of which is the appellant's responsibility; error is never presumed. (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) The appellant has the burden of demonstrating error. (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 978.) There are two corollaries to this principle. One is that if it is not in the record, it did not happen. (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364 ["When practicing appellate law, there are at least three immutable rules: first, take great care to prepare a complete record; second, if it is not in the record, it did not happen; and third, when in doubt, refer back to rules one and two."]) The other is that when the appellant refers to a matter in the record *at any point* in a brief, he or she must give the citation to the place in the record where the reference can be found. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970.) Otherwise, we would have to search the record ourselves for corroboration, and that is not our job. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

Another feature of appellate review is that we review only the judgment or appealable order identified in the notice of appeal. We can review prior nonappealable orders on an appeal from a judgment or an appealable order. But we cannot review subsequent orders not mentioned in the notice of appeal. A notice of appeal that fails to specify the judgment or order appealed from is insufficient to confer jurisdiction on a reviewing court. (See *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239, 240; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89-90; *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170 ["'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal"]; *Shiver,*

6

*McGrane & Martin v. Littell* (1990) 217 Cal.App.3d 1041, 1045 ["Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed."].)

In this case, the only order identified in the notices of appeal is the order denying Edward's motion to vacate, entered on April 15, 2019, and the order imposing attorney fees on Edward, also entered on April 15. We cannot review orders entered after that one. The notices of appeal filed on July 17 and September 6, 2019, identify only the April 15 order as the relevant one, and our review is restricted to that order.

Still another feature of appellate review is that, for the most part, for an issue to be preserved for appeal, it must have first been raised in the trial court. As a general rule, we do not review issues raised for the first time on appeal. (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) And we review only those issues that are raised in the opening brief. (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 836.) As error must be demonstrated, we assume that if the appellant did not identify a ruling as erroneous, he or she does not dispute the court's decision on that issue.

Finally, as a reviewing court we do not reweigh evidence, and we do not reassess credibility. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622.) These matters are entrusted to the trial court. A challenge to the evidence supporting an order or a judgment must take into account the substantial evidence standard of review, under which we must affirm if any substantial evidence supports the trial court's decision, and we must disregard contrary evidence. (*Orange County Employees Assn. v. County of Orange* (1988) 205 Cal.App.3d 1289, 1293.)

Edward's motion to vacate raised the following issues: the court lacked jurisdiction because (a) the family law case no longer existed after the satisfaction of judgment and (b) Deborah did not serve Edward with a summons and complaint; Edward

7

did not know one of the issues would be fraud, so he was surprised when this turned out to be an issue; the debt settlement agreement was integrated and thus precluded consideration of parol evidence.[7]  In his reply brief, Edward also complained that the court had refused to accept a written version of his oral motion for judgment under Code of Civil Procedure section 631.8.  Edward made the motion orally after Deborah rested; he offered a written version at the end of trial, just before the court rendered its decision.[8]

On appeal, Edward has attempted to expand the issues to be considered. The new issues include Edward's purported failure to stipulate to a commissioner to hear the RFO, the court's purported entry of an order for spousal support after the parties had waived spousal support in the judgment, and several objections to the court's rulings on evidence at trial.  Edward also argues several issues pertinent to the proceedings that took place *after* April 15, 2019, proceedings that we cannot consider because the relevant orders are not identified in the notices of appeal.

**I.          Stipulation to a Commissioner**

Edward contends he never signed a stipulation to allow Commissioner Michaelson to hear his case and the court therefore lacked jurisdiction to issue the order of October 12 enforcing the judgment.  Jurisdiction is a question of law that we review independently.  (*In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 592 (*Jensen*).)

The minute orders of September 18 and October 12, 2018 (the two days of trial), do not record any objection by Edward to proceeding before a commissioner. Likewise, the reporter's transcripts for those two days do not reflect any objection. Instead, the parties appeared for trial, and Edward himself testified for part of the first day and most of the second.

---

[7]          On appeal, however, Edward argues that the court "abused its discretion in its ruling to disregard any parol evidence as to the 2016 written contract . . . ."

[8]          Although Edward included this issue in his list of 13 appellate issues, he presented no supporting argument or authority in his opening brief.  An issue that is raised but not argued is deemed waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).)

8

Edward claims he refused to stipulate to a commissioner at a pretrial hearing on August 22, 2018. The minute order reflects no such objection. The reporter's transcript likewise includes no objection to the commissioner; on the contrary, Edward's counsel announced ready for trial and agreed to a September 18 trial date. The continuance was necessary because Edward had prepared an opposition to Deborah's RFO that had not made it into the court's file by August 22 and that Deborah's counsel had not had a chance to review. If it is not in the record, it did not happen.

A written and signed stipulation is not necessary to confer jurisdiction on a temporary judge. The parties can consent to jurisdiction orally or impliedly by conduct. (*In re Richard S.* (1991) 54 Cal.3d 857, 864 ["[I]t would be ""intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceeding to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.""""]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 988-989; *In re Lamonica H*. (1990) 220 Cal.App.3d 634, 640.)

In this case, Edward participated in three pretrial hearings and a two-day trial, without bringing up the lack of a written stipulation. By that time he had consented by conduct to a decision by the commissioner, and he had waived any objection.

Edward argues that he objected to the commissioner at a hearing on July 11, 2018, by refusing to sign the stipulation allowing the commissioner to hear his case. The record does not include a reporter's transcript for a hearing on July 11, and the minute order of that date does not record an objection to the commissioner. Nor could we find such an objection anywhere else. As stated above, if it is not in the record, it did not happen. Edward further argues that he continued to object "often and frequently" to the commissioner, but he presents no citations to these often and frequent objections in the record occurring before April 15, 2019. As stated above, factual assertions must be accompanied by citations to the record wherever they occur.

9

**II.          Continued Jurisdiction of the Family Court**

Edward contends the divorce case was over with the 2013 satisfaction of judgment. If Deborah had some subsequent complaint about Edward's conduct, she had to bring a civil suit for breach of contract. The family court no longer had jurisdiction to hear a matter concerning the divorce. And because Edward was not served with a summons and complaint, the court had no personal jurisdiction over him.

This argument raises two issues, both of which are questions of law. (*Jensen, supra*, 114 Cal.App.4th at p. 592.) First, did the family court have subject matter jurisdiction to try the matter? Second, did the court have personal jurisdiction over Edward, or did he have to receive a summons and a complaint? In other words, was the service of Deborah's RFO sufficient to bring Edward before the court? This issue is entwined with the first one; if the family court had no subject matter jurisdiction, then Deborah had to bring a civil suit and had to serve Edward with a summons and complaint.

Family Code section 290 provides: "A judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary."

In this case, the divorce judgment of 2007 was still executory. Edward and Deborah had agreed that her equalization payments would be paid in installments, over 30 years, and the time period was not over. When Edward ceased paying before the final installment, or, as in this case, indicated that he was not going to keep paying the installments, the family court had jurisdiction to take the necessary measures to enforce the judgment. (See, e.g., *In re Marriage of Justice* (1984) 157 Cal.App.3d 82, 86; *Brown v. Brown* (1971) 22 Cal.App.3d 82, 84; Code Civ. Proc., § 128, subd. (a)(4).)

The 2013 acknowledgement of satisfaction of judgment was not filed with the court. Under Code of Civil Procedure section 724.030, Deborah, as judgment

10

creditor, was supposed to file the acknowledgement. If she did not, Edward was entitled, under Code of Civil Procedure section 724.050, to demand that she do so. This is the sole statutory remedy for making a judgment creditor file an acknowledgement of satisfaction of judgment. (*Horath v. Hess* (2014) 225 Cal.App.4th 456, 466.) Edward is, in effect, trying to enforce a satisfaction of judgment outside the statutory procedure set up in the Code of Civil Procedure for that purpose, which he cannot do.

In essence, then, the family court ordered Edward to comply with the portion of the judgment of divorce requiring him to pay Deborah the remainder of the monthly equalization payments, after he received credit for $850,000 paid in 2016.[9] Pursuant to Family Code section 290, the court had jurisdiction to enforce that judgment.

Edward was served with the moving papers for Deborah's RFO and responded to them. His answer and appearance were sufficient to confer personal jurisdiction upon the family court. (See *ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 210.) The record does not indicate that Edward ever made a motion to quash under Code of Civil Procedure section 418.10, subdivision (a)(1) for lack of jurisdiction.

**III.        Motion to Vacate**

On appeal, Edward contends his motion to vacate was brought pursuant to section 473, subdivision (b).[10] Section 473, subdivision (b), provides in pertinent part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading

_____

[9]        Edward erroneously argues on appeal that these payments were for spousal support, an issue not raised in the motion to vacate. The payments were not spousal support. They were Deborah's equalization payments, which she had agreed to receive over time.

[10]        The motion to vacate also referred to section 473, subdivision (d), which provides: "The court may, . . . on motion of either party after notice to the other party, set aside any void judgment or order." Edward contended that the order of October 12, 2018, was void for lack of service of process or notice, i.e., a summons and complaint. He has not pursued this argument on appeal, and we regard it as abandoned. (See *Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

11

proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken. . . .  Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."  We review a trial court's decision to grant or deny relief under section 437 for abuse of discretion.  (*Roberts v. Roberts* (1966) 245 Cal.App.2d 637, 639.)  It is Edward's burden to show how the discretion was abused.  (See *ibid.*)

Edward's explanation of how the trial court abused its discretion in denying his section 473 motion is simply incomprehensible.  He cited to and quoted from several cases dealing with *mandatory* relief under the statute, apparently unaware that mandatory relief applies only in cases in which an *attorney* has acknowledged mistake, inadvertence, surprise, or neglect.  Moreover, in the cases Edward cited the appellate courts *reversed* a trial court's *grant* of relief under the statute, holding that mandatory relief was available only in cases of default and not when other sorts of adverse consequences ensued from mistake and neglect.  None of this applies to his case.  There was no attorney declaration of fault attached to the motion, there was no default, and the trial court denied the motion.

Edward also argues that his motion was timely – the court never said otherwise – and that the court had the power to enlarge the time for filing an answer. How either argument applies to his case is a mystery we have not been able to solve.

Edward does not explain how the trial court abused its discretion in denying his motion to vacate, especially since the bulk of the motion dealt with the admission or

12

exclusion of evidence. A section 473 motion is not the vehicle with which to challenge evidence. (*Litvinuk v. Litvinuk* (1945) 27 Cal.2d 38, 43-44 ["[I]f the grounds upon which the party sought to have a judgment vacated existed before the entry of judgment and would have been available upon an appeal from the judgment, an appeal will not lie from an order denying the motion."].) As the court repeatedly told Edward's counsel, it was not going to retry the case on a motion to set aside for a party's or counsel's mistake, surprise, or neglect.

## IV.        Attorney Fees

In addition to opposing Edward's motion to vacate, Deborah asked the court to award $5,625 in attorney fees for opposing the motion. The court awarded $3,000.

Family Code section 271 permits a court to award fees when a party's conduct frustrates the policy of the law to reduce the cost of litigation. We review the award of fees for abuse of discretion. (*In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 82.)

Inasmuch as Edward made a motion entirely without statutory foundation, forcing Deborah to oppose it and requiring an appearance of counsel at a hearing, we cannot see that the court abused its discretion in requiring Edward to reimburse Deborah's attorney fees. Family Code section 271 allows the court to sanction a party for increasing the cost of litigation, and that is what Edward's motion did.

## V.        Other Issues

As stated above, we cannot review the remaining issues. One reason is that a section 473 motion is not the proper procedure for disputing the court's evidentiary rulings at trial (parol evidence, judicial notice). Another reason is that Edward failed to provide supporting argument and authority (Code of Civil Procedure section 631.8 issue). A third reason is that we cannot review orders subsequent to the ones identified in the

notices of appeal (orders issued after April 15, 2018).  A final reason is that the issue was not first raised in the trial court (spousal support).

## DISPOSITION

The orders of April 15, 2019, are affirmed.  Respondent is to recover her costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.

14